## CHITTENDEN vs. PAGE ET AL.

### APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

A lot of furniture under seizure is bought by an intervening party, who pays the *debt*, gives his note for the balance of the price, and takes the sheriff's receipt for the property on *storage*. *Held*, that it is a good sale *and delivery*. The possession was given by the officer, who afterwards as agent of the purchaser, takes it on storage.

This case grows out of a seizure of a lot of furniture. The plaintiff having obtained a judgment for $742 against the defendant, Mrs. Maria C. Page, caused execution to issue the 20th November, 1840, which was levied on a lot of furniture, that had been previously attached and sequestered at the suit of Brower & Co., and was in the sheriff's store-house. It appeared in evidence that R. M. Bines, came forward and paid Brower & Co's debt, and took a sale of the goods from Mrs. Page, with Brower's consent, who released the seizure on being paid. The sale purported to be made for $1000 in cash and the purchaser's note for $1500. Bines took the sheriff's receipt for this furniture *on storage*. On the next day, the plaintiff levied his execution on the same furniture in the store-house, and gave the sheriff an indemnifying bond to sell it. Bines now intervened and made opposition to the seizure, basing his opposition on the sale of the property to him.

The plaintiff alleged this sale to be fraudulent and simulated, made to defraud creditors; and that no delivery of the pro-

perty had been made. The cause was submitted to a jury on this issue. A mass of testimony was taken and interrogatories propounded by the plaintiff to the intervenor, touching the fairness of the sale, &c.; which were fully answered, and went to the jury uncontradicted. There was a verdict and judgment for the intervenor, and the plaintiff appealed.

EASTERN DIS<br>
May, 1841.<br>
<br>
CHITTENDEN<br>
vs.<br>
PAGE ET AL.

*Greiner*, for the plaintiff and appellant.

*Elwyn*, contra.

*Garland, J.* delivered the opinion of the court.

The plaintiff being a judgment creditor of the defendant, on the 20th of November, 1840, issued his execution, which on the same day was levied on a large quantity of household furniture, which is claimed by the intervenor, who alleged, he purchased it on the 19th of November, 1840, for a valuable consideration, as will appear by a notarial act, filed with his petition of intervention.

The plaintiff denies, the intervenor is owner of the furniture; he says, if it ever was sold, it was not delivered before his seizure ; that the sale was fraudulent and void, as the defendant was in insolvent circumstances at the time, to the knowledge of the intervenor; that he knew of the judgment, as he had once been summoned to answer, if he had not property of defendant's in his hands; that although $1000 was paid in cash when the sale was passed, and a note given for $1,500 more, yet it was all done for the purpose of defrauding him ; that the money belonged to defendant, and the note was not to be paid ; that the intervenor has no means whatever and defendant knew it, that the sale was made for $2,500, whilst the property was worth upwards of $5,000 ; that the intervenor has no family, keeps no boarding house, the property cannot be used by him as he is not engaged in trade, and the purchase will prove a loss to him, if he is in good faith; that defendant is to keep the boarding house and the purchase was made to assist her; and lastly, he has a privilege on a quantity

of carpeting and other articles.  In addition to all these alle-- gations, the plaintiff propounded interrogatories to the inter- venor to know where and how he obtained the $1000 he paid, whether he got it from a bank, and what bank, whether he (the intervenor) owned any property in the city, and if so, what it was; whether it was not understood that defendant was to remain in possession of the property, and finally where his note is, and if he ever expects to pay it.

To these interrogatories, the intervenor seems to have an- swered with much good faith, that he borrowed the $1000 from a friend and returned it in a few days after, as he got a note discounted in bank to repay it, that he has some promissory notes and furniture, also thirty eight lots of ground in the parish of Jefferson, which are paid for.  That there was no understanding between him and defendant that the furniture was to remain in defendant's possession, that the sale was not made with the intention of defrauding plaintiff, but to assist defendant, who is, as he believes able to pay her debts as far as he knows any thing about them, but is temporarily embar- rassed, and that he expects to pay the note he has given when it becomes due.

This suit is an instance of the trouble and difficulties a cre- ditor may sometimes bring on himself, by pursuing a harsh and vexatious course towards his debtor.  The demand of the plaintiff is for less than $900, a person who appears to be en- tirely solvent, and proved to be honest, acknowledges he owes the defendant $1,500, payable in one year.  Yet in place of calling upon him in the manner prescribed by the act of the Legislature of 1839, the creditor pursues a course calculated to harrass all the parties and cast odium on them, without ad- vancing his own interests.  When he requested the sheriff to make a levy, that officer told him the property had been sold, yet he persevered and gave a bond to indemnify him, for seiz- ing in the hands of a third person.

The evidence shows that Brower & Co. had an attachment and sequestration for about $1000 against the defendant, the

intervenor agreed to purchase the furniture in possession of the sheriff and pay the demand, the defendant made a sale for $2,500, Brower & Co. joined in it, received the $1000 in cash, subrogated the intervenor in all their rights, and the same day, they and defendant requested the sheriff to deliver the possession to the purchaser, which he did, as appears from the receipt of Hozey, acknowledging he had received the furniture on storage. All this had taken place before plaintiff issued his execution. This delivery the plaintiff contends was not sufficient, and rests his case very much on it. Upon the evidence adduced, we think there was a sufficient delivery of the furniture. The seizure by the sheriff divested the defendant of all right of possession of the property, and when he with the assent of the defendant and intervenor, delivered it to the latter, by giving him a receipt as having received it on storage, the provisions of the law were complied with. La. Code, arts. 2452—53. The possession was given by the officer, and afterwards as an agent he received the furniture on storage.

EASTERN DIS.
May, 1841.

CHITTENDEN
vs.
PAGE ET AL.

A lot of furniture under seizure, is bought by an intervening party, who pays *the debt,* gives his note for the balance of the price and takes the sheriff's receipt for the property *on storage; Held,* that it is a good sale and *delivery.* The possession was given by the officer who afterwards as agent of the purchaser, takes it on storage.

As to the sale being fraudulent on account of the known insolvency of the vendor, we think the allegation is not sustained. It is not shown the defendant owed any person but Brower & Co. and plaintiff. Their debts were less than $2000. The sale was made for $2,500, and plaintiff says, defendant's furniture was worth upwards of $5000. The intervenor denies on oath in his answers to interrogatories that defendant was insolvent, and no effort is made to contradict him.

After the admissions that $1000 in cash was paid as a part consideration of the sale, and a note for $1,500 more executed; it is difficult to conceive an intention to defraud the plaintiff out of a debt of less than $900, when the $1,500 was more than sufficient to pay it. The intervenor says on his oath, he expects to pay that note at maturity.

It is proved that the intervenor is a clerk in a bank, at a liberal salary, that he has some property, and although the purchase he has made, may not prove a profitable one, we cannot on that account say the sale is fraudulent. The jury'

EASTERN DTS. upon hearing all the testimony, found a verdict for the inter-
May, 1841. venor, and we see no sufficient cause to disturb it.

LAIDLAW            The judgment of the Commercial Court is therefore affirm-
vs.
TYSON.      ed with costs.